TURNER v. MOORE et al.

(District Court, D. Minnesota, Fourth Division. March 29, 1912.)

PATENTS (§ 328*)—INFRINGEMENT.

   The Turner patent, No. 985,119, for steel skeleton concrete construction, *held* not infringed.

In Equity. Suit by Claude A. P. Turner against Morris E. Moore and Edward J. Scriver, copartners as Moore & Scriver. On final hearing. Decree for defendants.

Charles J. Williamson, of Washington, D. C., and L. A. Hubachek, of Minneapolis, Minn., for complainant.

H. E. Fryberger, of Minneapolis, Minn., for defendants.

WILLARD, District Judge. The only question which I shall consider is whether or not the defendants' building infringes the complainant's patent. Claims 1 and 4 of patent No. 985,119, issued to Turner on February 21, 1911, require: (a) A cantilever head; and (b) rods extending from said head downward into the column. The cantilever head has necessarily as a part thereof cantilever rods. Are the basket rods found in the Moore & Scriver building cantilever rods?

The slab is eight inches thick. (Defendants' Record, Sandberg, p. 258; Johnson, p. 277.) Sandberg, the foreman, knows what he testified about, because he measured the slabs. (Page 259.) The basket rods entered the slab from below only two inches. (Sandberg, p. 258; Johnson, p. 277.) Sandberg knows this, also, because he measured the pattern. (Page 260.) The rods turned at once at the top; they did not extend horizontally. (Defendants' Record, pp. 179, 322.) This is clearly shown in the building inspector's sheet No. 10, and also in the model presented by the defendants, the accuracy of which is established by the evidence. In the specification of the patent it is said (page 2, line 113) that the rods extend laterally into the slab substantial distances beyond the sides of the column.

Under these circumstances, Heidenrich did not greatly exaggerate when he said (Defendants' Record, p. 345) that the basket rod could not be a cantilever by the wildest stretch of the imagination. To be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a cantilever, some part of the rod must be in tension. The complainant in his brief speaks of the tension member of the elbow rod. (Page 54.) The basket rods in the Moore & Scriver building, extending into the lateral part of the slab only two inches, are below the neutral axis, and are not in tension. The basket rods serve an entirely different purpose from that served by Turner's elbow rods. The basket rods are used as a strut or brace. (Defendants' Record, Cowles, p. 42; Hamlin, p. 217; Houghton, pp. 275, 299, 311; Heidenrich, p. 346.)

It is true that Turner in his patent mentions supplemental bracket or brace rods $(c^3)$. These braces also appear in the drawings for the Wisconsin freight house, and in those for the Lindeke, Warner & Co. building. But Houghton (Defendants' Record, pp. 266, 267) and Cowles (pages 160, 203) testify that when Turner presented the drawings for the Johnson & Bovey building they showed no such braces, that Turner said they were not necessary, but that Houghton insisted that they be put in. However this may be, the claims of the patent which are sued on do not include these braces as an element.

It is said, however, that in some of the columns on the first floor the basket rods extended above the slab rods, and the large photograph is relied upon to show this. A photograph is not always conclusive evidence of what it purports to represent; but, apart from this, Cowles testifies (page 201) that the instructions were to jack up the steel just before the concrete was poured. Cook says that in some places he used brick, and that the men pulled up the rods with hooks before the concrete was poured. (Page 290.) Cook, however, did testify that some of the basket rods on the first floor did extend into the slabs more than two or three inches, but that they found that the tops were in the way of the slab rods, and they made the basket rods shorter, so that they would just catch onto the form and hold them in place. He nowhere says that these longer rods had any horizontal section; on the contrary, he says that the rods used in the building were in the form of a hook, as shown in the model. (Page 253.)

But, even assuming that in some of the columns on the first floor the tops of the hooks did extend above the neutral axis, their value as tension or cantilever rods would be so small that they could not properly be called such. (Cowles, p. 196; Hamlin, p. 216.)

Although the basket rods are not cantilever rods, yet complainant says that the rods $(f)$ are, that they with the ring $(e)$ form a cantilever head, and that the basket rods constitute the member extending downward into the column.

It is to be observed that the plans did not call for the links, 16, Fig. 1, or the hooks, 19, Fig. 5, of the Cowles patent. (Defendants' Record, pp. 153, 159.) The evidence clearly shows that the basket rods used in the building were in no way fastened to the ring $(e)$ or to the rods $(f)$. (Houghton, p. 310; Cook, 299; Cowles, 42, 201.) The complainant in his brief does not seriously contest this proposition. (Page 64.)

It is evident that, in order to co-act with the cantilever head, its member extending downward must be attached to it. The specification of the patent says (page 2, line 26) that the primary function of

the member extending downward is to perform the office of an anchorage for the cantilever head. It thus appears that, while the ring *(e)* and the rods *(f)* may be a cantilever head, the element of a member extending downward is wanting in the defendants' building.

Concerning claim 6 little need be added. As Heidenrich says (page 366) the word "vertical" cannot in ordinary parlance include a case where there is an angle with the axis of some perpendicular body.

Let a decree be entered for the defendants, dismissing the bill, with costs.